UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

      Plaintiff,                            Case No. 25-cr-20053

v.                                         Hon. Nancy G. Edmunds

Kevin Delgado,

      Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

*"watch every step u take u disgusting drunk dyke nazi you will be #murdered."*
        —Kevin Delgado, October 22, 2023

      This threat directed towards Michigan Attorney General Dana Nessel was in response to a picture she had posted depicting herself with her friend who had been brutally murdered that day. Individuals—hiding behind the anonymity of their phones or computer screens—who issue violent threats on social media or other online forums to public officials is all too common today and needs to be deterred. As such, for the reasons discussed below, the Court should sentence the defendant to 12 months in prison, which is within the guideline range determined by the Probation Department.

I.     PROCEDURAL BACKGROUND

On February 5, 2025, the defendant was charged by indictment with one count of transmitting threats in interstate commerce, in violation of 18 U.S.C. § 875(c), for posting a threat to kill Michigan Attorney General Dana Nessel on X (formerly known as Twitter) in October 2023. The grand jury also issued a special finding in the indictment that the defendant intentionally selected his victim because of the actual and perceived religion and sexual orientation of the victim. (ECF No. 1, PageID.1).

On May 19, 2025, the defendant pleaded guilty to Count One of the indictment pursuant to a plea agreement. (ECF No. 11, PageID.22). Sentencing is currently set for September 22, 2025.

II.    FACTUAL BACKGROUND

*The X Threat.* On October 21, 2023, "Individual 1," a Jewish female, was found stabbed to death outside of her home in Detroit. Individual 1 was active in the Jewish community and served as the president of the board of directors of a synagogue in Detroit. (PSR ¶ 10). Individual 1 was also active in Democratic politics in Michigan and previously worked for the victim, Attorney General Nessel, during Nessel's re-election campaign in 2022.

Immediately following the news of Individual 1's death, on October 21, 2023, Nessel posted to her X account a photo of Nessel and Individual 1 with the

caption "I am shocked, saddened and horrified to learn of [Individual 1]'s brutal murder. [Individual 1] was as kind a person as I've ever known. She was driven by her sincere love of her community, state and country. [Individual 1] truly used her faith and activism to create a better place for everyone." (*Id.*). Nessel also spoke at Individual 1's funeral service, which was held the day after the murder on Sunday, October 22, 2023.

On October 22, 2023 at approximately 1:25 p.m., the same day of Individual 1's funeral, the user of the X account @johndoe94859895, who was later identified as Delgado, replied to Nessel's X post about Individual 1 with the following post: **"watch every step u take u disgusting drunk dyke nazi you will be #murdered."** (PSR ¶ 11).

3



Nessel, who regularly receives threats as a public figure, remembers being disturbed about a threat she received shortly after Individual 1's murder, especially since the killer had not yet been found.

In February 2024, the FBI obtained a search warrant for Delgado's phone, among other things. His phone contained text messages that further revealed evidence of Delgado's bias against Jewish people:

- 10/14/2020: "Yea I'm a jew wit my dirt I resuse tht shit lol"
- 1/24/2021: "I do it the hardest but most jewish way lol"

4

- 1/24/2021: "Nothing u just save ur filter so u dnt have 2 replace it quickly, jew move"
- 1/31/2021: "Yep thts cali u shld be able too do tht on the east cost the jews fuk us" (PSR ¶ 13).

A search of Delgado's X account revealed more of the same:

- 4/15/2023: Delgado replied to a tweet that stated, "@QualityTweets78 disgusting pedophile ni**ar loving jew pedophiles need to be shot."
- 4/16/2023: Delgado replied to a tweet and ended the reply with a string of hashtags including "#jew #rats."
- 9/2/2023: Delgado made two separate tweets: (1) "#banadl," and (2) "#bantheadl."[1]
- 9/6/2023: Delgado tweeted, "#BanTheADL.
- 9/15/2023: DELGADO replied to a tweet about quarantine regulations and ended the reply with "#killjews." (PSR ¶ 14).

Related to Delgado's bias against LGBTQ+ individuals, following the threat to AG Nessel, Delgado sent a threat to the Governor of the State of New York. (PSR ¶ 16). On November 14, 2023, Delgado sent the following through the online "Send a Message to the Governor" form on the State of New York's official website: "there is no such thing as hate speech you treasonous ni**ar loving communist scum .only hate is from you tyrannical ape-loving communist naxis destroying this country . you n your whole family will be kidnped rped tortured to death u fascists cunt dyke." (*Id.*).

In this case, the defendant admitted that he posted that threat on X to AG Nessel because of her actual or perceived religion and sexual orientation.

---

[1] The reference to "ADL" likely is a direct reference to the Anti-Defamation League which is a historically Jewish advocacy organization established to fight anti-Semitism and other forms of bigotry and discrimination.

## III. PLEA AGREEMENT AND PRESENTENCE REPORT

In the plea agreement, the parties jointly recommended that certain guideline provisions apply to the offense of conviction:

- USSG § 2A6.1(a)(1): base offense level, 12
- USSG § 3A1.1(a): hate crime motivation, +3

The Probation Department agreed with the parties, provided the Court makes the requisite determination at sentencing that § 3A1.1(a) applies. (PSR ¶25).

"[I]n the case of a plea of guilty," the 3-level increase applies where "the court at sentencing determines beyond a reasonable doubt that the defendant intentionally selected any victim . . . as the object of the offense of conviction because of the actual or perceived . . . religion [or] sexual orientation . . . of any person." USSG § 3A1.1(a). Here, the defendant's admission during his guilty plea and the stipulated facts in the plea agreement establish beyond a reasonable doubt that the 3-level increase is warranted.

Based on these guideline provisions and the defendant's criminal history category of I, the Probation Department calculated Delgado's guideline range to be 12 to 18 months. (PSR ¶ 70). The government respectfully requests that the Court adopt these calculations.

## IV. SENTENCING RECOMMENDATION

When fashioning an appropriate sentence for a defendant, a court must first consider the applicable guideline range under 18 U.S.C. § 3553(a)(4). Although the sentencing guidelines are advisory, they are the "starting point and the initial benchmark" for federal sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). Once a court has determined the appropriate sentencing range, it must then consider that range in light of the other relevant § 3553(a) factors.

In order to arrive at an appropriate sentence, the Court must consider several factors, including: (1) the nature and circumstances of the offense; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the history and characteristics of the defendant; and (4) adequate deterrence of criminal conduct and the protection of the public. 18 U.S.C. § 3553(a). Section 3553(a) then requires the Court to "impose a sentence sufficient, but not greater than necessary, to comply" with these purposes. *Id*.

Consideration of the § 3553(a) factors here supports that a sentence of 12 months, which is at the bottom of the applicable guideline range, would be sufficient to reflect the seriousness of the defendant's conduct, and to promote respect for the law, provide just punishment and afford adequate deterrence of criminal conduct.

### A. The nature and circumstances of the offense and the History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

Delgado pleaded guilty to transmitting a threat to kill a public law enforcement official, State Attorney General Nessel. In May 2024, the Combating Terrorism Center at West Point published a study that examined federal charging data on "threats targeting a broad range of public officials across multiple public sectors over a 10-year period" and included data "across all 94 U.S. federal judicial districts." *CTC Sentinel*, Combating Terrorism Center at West Point, "Rising Threats to Public Officials: A Review of 10 Years of Federal Data," May 2024, Vol. 17, Issue 5, p. 21. The study found that "threats against public officials have steadily risen during the last decade," and that law enforcement/military personnel were the most commonly threatened type of public official (43 percent of the threat targets). *Id.* at p. 20-21. The study observed that threats "do not need to be executed beyond communication for them to be effective agents for instilling fear among victims and, most notably, disrupting democratic processes." *Id.* at 25. These disruptions can include causing public servants to resign, discouraging people from participating in public life, and creating the perception that the decisions of public officials are influenced by threats to their person. As the study concluded: "[w]hile it is true most threats will never be executed, the threats themselves – especially in total – represent an important type of action irrespective

of the intent or likelihood of attack that can have substantial consequences for the individual targets/victims as well as the system of governance." *Id.* at p. 21.

  Intentionally targeting a public official because of her religion and sexual orientation is an aggravating factor that underscores the seriousness of Delgado's conduct. A bias-motivated crime such as this one harms not only the direct victim, but also entire communities by instilling fear that they, too, could be targeted because of their religion or sexual orientation. The circumstances under which Delgado threatened AG Nessel makes his crime even more egregious. He intentionally targeted someone who was grieving the recent brutal murder of her friend, who was also Jewish. The well-publicized killing also made clear that the murderer was still unidentified and at large, making Delgado's threat to AG Nessel even more fear-inducing.

  While Delgado has no criminal convictions, this is not the only time he has threatened violence. About two weeks after threatening AG Nessel, Delgado threatened the governor of New York through a contact form on the State of New York's website. In that submission, Delgado wrote, "there is no such thing as hate speech you treasonous ni**ar loving communist scum .only hate is from you tyrannical ape-loving communist naxis destroying this country . you n your whole family will be kidnped rped tortured to death you fascists cunt dyke[.]" (PSR ¶ 32).

The nature and circumstances of Delgado's offense and his pattern of threatening conduct justifies the term of imprisonment that the United States seeks here.

**B.    The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A)**

The United States's sentencing recommendation accounts for the seriousness of the offense. Delgado transmitted a threat to murder a Michigan law enforcement official because of her Jewish religion and sexual orientation. For his threat to the New York governor, Delgado received a slap on the wrist by being allowed to plead guilty to disorderly conduct with a conditional discharge, after being initially charged with Aggravated Harassment Second Degree. (PSR ¶ 32). A sentence in this case needs to account for the seriousness of issuing threats of violence against public officials, especially those motivated by bias.

**C.    The need for the sentence imposed to afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B))**

The recommended term of imprisonment would sufficiently serve the purposes of specific and general deterrence. As described above, Delgado issued bias-motivated threats of violence to two different public officials in two weeks. For the latter threat, he barely faced any consequences. A sentence within the guidelines range would serve to deter the defendant from future similar conduct. Even more, as demonstrated in the West Point study, the increasing frequency of

violent threats to public officials – particularly law enforcement officials – only underscores the need for general deterrence. Online threats are easy to issue and oftentimes difficult to investigate due to the ease with which someone can hide their digital identity. The sentence here should send the message that those who issue threats of violence, even from behind their computer or from another state, will face serious consequences.

## V.     CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Court impose a sentence of 12 months' imprisonment.

Respectfully Submitted,

JEROME F. GORGON, JR.
United States Attorney

*s/ Frances Lee Carlson*
Frances Lee Carlson
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-9696
frances.carlson@usdoj.gov
P62624

Dated: September 15, 2025

## CERTIFICATE OF SERVICE

I certify that on Monday, September 15, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>Senad Ramovic
>senad_ramovic@fd.org

>*s/ Frances Lee Carlson*
>Frances Lee Carlson
>Assistant United States Attorney